```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TENNESSEE
                           WESTERN DIVISION
```

_____

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-20240-SHM-dkv |
| | ) | |
| TOMMY HOLMES, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### Order Adopting Report and Recommendation Denying Defendant's Motion to Suppress

_____

Before the Court is the Magistrate Judge's December 9, 2013 Report and Recommendation (the "Report") recommending that the Court deny Defendant Tommy Holmes' ("Holmes") Motion to Suppress (the "Motion"). (Rep., ECF No. 39.) On December 20, 2013, Holmes objected to the legal conclusions of the Report. (Obj., ECF No. 4 at 1, 3.) For the following reasons, the Report is ADOPTED. Holmes' Motion to Suppress is DENIED.

### I. Background

On October 4, 2013, Holmes filed his Motion to Suppress all evidence derived from his arrest on the grounds that the arrest warrant was invalid and the consent search of an apartment was illegal. On November 15, 2013, the Magistrate Judge held a "Franks hearing" as provided by Franks v. Delaware, 438 U.S. 154 (1978). (Rep., ECF No. 39 at 2.) The Report followed.

The arrest warrant was based on an "affidavit of complaint" dated February 28, 2013, made by Maryetta Rudd ("Rudd"), a probation officer at the Tennessee Department of Corrections (the "Rudd Affidavit"). (Id. at 8.) The Rudd Affidavit states that Holmes has violated his duty to register under the Community Supervision for Life Statute, Tenn. Code Ann. § 39-13-526. (Id.)

Holmes objects to the constitutionality of the arrest warrant on the ground that the Rudd Affidavit contains a false statement. (Id. at 20.) The Rudd Affidavit states that "on or about November 17, 2011, Mr. Holmes failed to report in person to the Tennessee Department of Corrections Probation and Parole within the allotted 72-hour period." (Id. at 20.) Holmes contends that the Tennessee Offender Management Information System ("TOMIS"), on which Rudd relied, states that Holmes was not released from prison until November 28, 2011. (Id.) Rudd testified that she arrived at the date of November 17, 2011, by relying on Holmes' release order, which listed his release date as November 14, 2011. (Id. at 11; Rel. Order, ECF No. 27-4.) "Seventy two hours from that date gave [Rudd] the estimate that Holmes should have reported '[o]n or about November 17, 2011.'" (Rep. at 11.) The Magistrate Judge found that "the statement, '[o]n or about November 17th, 2011,' is not a false statement because it allows for some discrepancy in the date of violation." (Id. at 22.) The Magistrate Judge also found that, even if the statement were false, Rudd reasonably derived that date from the release order. (Id.)

2

Detective Brandon Evans ("Evans") and Officer Hudson ("Hudson") (collectively, the "Officers") executed the arrest warrant on February 28, 2013. They went to 1773 Gowan Street, Apartment 1, the address given on the sex offender registry. (Id. at 12.) When Evans and Hudson knocked, Holmes answered. (Id.) The Officers informed Holmes that they had a warrant for his arrest, and arrested him. (Id. at 12-13.) Holmes told the Officers that he did not live at 1773 Gowan Street. (Id. at 13.) Evans testified that he did not ask Holmes for his consent to search because Holmes had told him he did not live there. (Id. at 15.) After placing Holmes in the police car, the Officers returned to the apartment and asked Sheila Holmes ("Mrs. Holmes"), the resident of the apartment, for consent to search it. (Id.)

Mrs. Holmes testified that the Officers told her that they needed to search the apartment and wanted her consent to do so. (Id.) She testified that she had the option to say yes or no and that she was not worried that the police believed she was involved in any crime. (Id.) She stated that she was not coerced to consent to the search, but was a little scared and shaken up because she had never had police officers in her home. (Id.) Detective Evans testified that he and Hudson never threatened Mrs. Holmes to obtain her consent. (Id.) He explained why they were there, asked for her permission to search the apartment, believed she understood what he said, and handed her the consent form. (Id.) Mrs. Holmes signed the consent form. (Id.) As the police searched the apartment, Mrs. Holmes accompanied them and was not secured by handcuffs. (Id.) The officers discovered a 9mm

3

Lorcin pistol in a suitcase that Mrs. Holmes said belonged to Holmes and clear bags containing cocaine residue. (Id.)

At the Franks hearing, Holmes called an investigator, Eileen Knoblock ("Knoblock"), who testified that she had called Mrs. Holmes on or about September 19, 2013, and discussed the events of February 28, 2013 with her. (Id. at 16.) Knoblock testified that Mrs. Holmes told her that the Officers had told Mrs. Holmes she had to consent to the search or else go to jail. (Id.) Mrs. Holmes contradicted that testimony under oath at the Franks hearing. She testified that the police did not threaten her to obtain her consent to search. (Id. at 17.) The Magistrate Judge found Mrs. Holmes to be a credible witness and relied on her sworn testimony that she had not been threatened. (Id.)

**II. Standard of Review**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). "A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review — under a de novo or any other standard — those aspects of the report and

4

recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985).

### III. Analysis

The Magistrate Judge found that the arrest warrant was valid because the statement Holmes claimed was false was true and, even if the statement were false, Holmes had not shown that it was made with reckless disregard for the truth. (Rep. at 23.) The Magistrate Judge found that Mrs. Holmes' consent was valid even if the arrest were illegal, because her consent was given voluntarily and was sufficiently attenuated from Holmes' arrest. (Id. at 25-26.) Holmes has filed a timely objection to the Report arguing that the Rudd Affidavit contained a false statement and that Mrs. Holmes' consent to search the apartment was invalid because it was not sufficiently attenuated from Holmes' illegal arrest. (Obj., ECF No. 4 at 3-5.)

To successfully challenge an arrest warrant for relying on a false statement, a defendant must (1) establish perjury or reckless disregard for the truth by a preponderance of the evidence and (2) prove that, absent the false testimony, the affidavit's remaining content is insufficient to establish probable cause. Franks, 438 U.S. at 155-156. See also United States v. Charles, 138 F.3d 257, 263 (6th Cir. 1998). Warrants carry a "presumption of validity," and truthfulness in a warrant does not mean "truthful in the sense that every fact recited in the warrant affidavit is necessarily correct." Id. at 171, 165. "Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than reckless falsehood that

5

is required for exclusion." United States v. Elkins, 300 F.3d 638, 649-50 (6th Cir. 2002).

Holmes has failed to establish that the Rudd Affidavit contained perjury or a false statement showing reckless disregard for the truth. The statement that "on or about November 17, 2011, Mr. Holmes failed to report in person to the Tennessee Department of Correction Probation and Parole within the allotted 72-hour period," was not a false statement. (Rep. at 20.) Even if the statement were false, Holmes has failed to show that Rudd's error was intentional or in reckless disregard of the truth because Rudd relied on the release order as the basis for the allegedly false statement. See Elkins, 300 F.3d at 649-50. The Court ADOPTS the Magistrate Judge's finding that Holmes' arrest was not illegal.

Mrs. Holmes' consent to the search was voluntary. She testified that she was not threatened and voluntarily gave consent. (Rep. at 15.) Because Holmes' arrest was not illegal, there is no need to address whether Mrs. Holmes' consent was sufficiently attenuated from an illegal arrest to be valid.

**IV. Conclusion**

For the foregoing reasons, the Report is ADOPTED. The Motion to Suppress is DENIED.

So ordered this 3rd day of January, 2014.

                                                s/ Samuel H. Mays, Jr.
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE